**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

KA'DEEF M.,

      Plaintiff,

  v.           3:20-CV-787
               (DJS)
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LACHMAN & GORTON<br>Attorney for Plaintiff<br>1500 E. Main Street<br>P.O. Box 89<br>Endicott, New York 13761 | PETER A. GORTON, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL<br>Attorney for Defendant<br>J.F.K. Federal Building - Room 625<br>15 New Sudbury Street<br>Boston, Massachusetts 02203 | DANIEL TARABELLI, ESQ. |

**DANIEL J. STEWART
United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER[1]

  Currently before the Court, in this Social Security action filed by Plaintiff Ka'deef M. against the Commissioner of Social Security, are Plaintiff's Motion for

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 7 & General Order 18.

Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 11 & 14. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion for Judgment on the Pleadings is denied. The Commissioner's decision denying Plaintiff disability benefits is reversed, and the matter is remanded for further proceedings.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1994, making him 22 years old at the time of his Supplemental Security Income ("SSI") application and 24 years old on the date of decision of the Administrative Law Judge ("ALJ"). Dkt. No. 10, Admin. Tr. ("Tr.") at p. 174. Plaintiff received special education assistance while in school due to emotional difficulties, including a period of at-home instruction after a behavioral incident in the classroom. Tr. at pp. 42, 198, 202. He left school before completing the eleventh grade, reportedly being expelled "because of my disability, my anger mostly." Tr. at pp. 40, 284. After leaving school, Plaintiff participated in a Job Corps vocational training program but did not complete it. Tr. at pp. 41, 284. Since leaving the training program, he has held a number of temporary positions on an irregular basis, including assembly work at a facility that manufactured vacuum filters and janitorial work.[2] Tr. at pp. 52, 185, 188.

---

[2] The ALJ determined that none of this work rose to the level of substantial gainful activity. Tr. at p. 14.

Plaintiff reported that he was unable to work due to post-traumatic stress disorder, anger management issues, depression, and social anxiety. Tr. at p. 211. According to Plaintiff, these conditions result in panic attacks, heart palpitations, sweating, difficulty breathing, trembling, and chest pain, particularly when he is around large groups of people. Tr. at pp. 285-286, 363. He also reported that concerns about the safety of himself and loved ones due to past traumatic experiences make him hypervigilant, and keep him awake at night. *Id.*

According to Plaintiff, he has been arrested at least fifteen times, most recently for drug possession. Tr. at pp. 275, 287, 404. Plaintiff reported that he self-medicated with marijuana because "[i]t helps me cope." Tr. at pp. 286, 293. The record includes a psychiatric hospitalization in November 2016 after Plaintiff threatened to kill himself or make the police kill him following a domestic dispute. Tr. at pp. 266, 272, 284.

### B. Procedural History

Plaintiff received SSI benefits as a child beginning in August 2010, when he was fifteen years old. Tr. at p. 58. As required by law, plaintiff's eligibility for these disability benefits was redetermined under the rules for determining disability in adults when Plaintiff turned eighteen. *Id*. On April 17, 2013, an initial determination was made that Plaintiff was no longer disabled as of that date. *Id*. This determination was upheld upon reconsideration after a disability hearing by a state agency disability hearing officer on August 9, 2013. *Id*. Plaintiff requested a hearing before an ALJ and appeared without counsel at a hearing on May 8, 2014. *Id*. On August 5, 2014, the ALJ

3

determined that Plaintiff was not disabled as of April 17, 2013, and had not become disabled again as of the date of the decision. Tr. at p. 66.

Plaintiff filed the new SSI application at issue in this case on December 6, 2016. Tr. at pp. 174-180. Plaintiff's application was initially denied on March 8, 2017, after which he timely requested a hearing before an ALJ. Tr. at pp. 82-85, 88-90. ALJ Elizabeth W. Koennecke held an administrative hearing on October 10, 2018, at which Plaintiff testified. Tr. at pp. 36-54. The ALJ held a supplemental hearing on February 25, 2019 to hear the testimony of vocational expert ("VE") Marian Marracco. Tr. at pp. 26-34.

On March 15, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled under the Social Security Act. Tr. at pp. 8-24. On June 2, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-5.

### C. The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2016, the amended alleged onset date. Tr. at p. 14. Next, the ALJ found that Plaintiff had a severe mental impairment. *Id*. In light of the multiple diagnoses in the record, the ALJ defined it as "all mental impairments as variously characterized." *Id*. The ALJ then found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed

4

impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at pp. 14-16. The ALJ then found that Plaintiff's residual functional capacity ("RFC") allowed him to perform a full range of work at all exertional levels but with certain nonexertional limitations. Specifically, the ALJ found that Plaintiff retains the ability

> to understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; handle simple, repetitive work-related stress in that the person can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require the claimant to supervise or manage the work of others; should avoid work requiring more complex interaction or joint effort to achieve work goals for example, and can have no contact with the public.

Tr. at p. 16.

The ALJ next found that Plaintiff has no past relevant work. Tr. at p. 19. Relying upon the VE testimony, and taking into account Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. Tr. at p. 19. The ALJ therefore concluded that Plaintiff had not been under a disability since the application date of November 16, 2016. Tr. at p. 20.

### D. The Parties' Positions

Plaintiff makes four arguments in support of reversal. First, he argues that the ALJ's RFC determination failed to account for Plaintiff's functional limitations in social interaction. Dkt. No. 11, Pl.'s Mem. of Law at pp. 6-8. Second, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence, particularly with regard to

functional limitations associated with attention and concentration. *Id*. at pp. 8-16, 19-23. Third, Plaintiff argues that the ALJ erred by failing to consider his education records, including his individualized education plan ("IEP") that addressed his mental impairments. Tr. at pp. 16-19. Finally, Plaintiff argues that the ALJ erred at step five. Tr. at p. 23.

Defendant counters that the ALJ properly evaluated the record evidence and made a disability determination that is supported by substantial evidence.[3] *See generally* Dkt. No. 14, Def.'s Mem. of Law.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Hum. Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a

---

[3] Defendant's brief devotes significant time to a policy argument encouraging the Court to adopt an expansive approach to issue exhaustion in social security cases, including Plaintiff's. Dkt. No. 14 at pp. 8-11. This prompted Plaintiff to file a reply brief on the issue, and the Defendant to file a sur-reply on the same topic. Dkt. Nos. 17 & 20. Plaintiff also filed a letter brief updating the court on recent judicial developments in this area. Dkt. No. 21. Because the Court is remanding for other reasons, it need not delve into the parties' arguments, but notes that the United States Supreme Court has adopted a narrow approach to issue exhaustion in such cases, due to the non-adversarial manner of social security administrative proceedings. *See Carr v. Saul*, 141 S. Ct. 1352, 1359 (2021); *Sims v. Apfel*, 530 U.S. 103, 109 (2000).

finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and "may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Hum. Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

# III. ANALYSIS

## A. Remand is Required due to the ALJ's Failure to Consider the Young Adult Plaintiff's Educational Records

As part of her RFC determination, the ALJ stated "[t]here is little medical evidence relating to his mental impairments. There is an IEP and school records, however they date from well prior to the claimant's eighteenth birthday and have little applicability to his current situation at age twenty-two." Tr. at p. 17.

The educational records available to the ALJ included an October 12, 2006 evaluation by school psychologist Dr. William J. Zoda when Plaintiff was almost twelve years old and in the sixth grade. Tr. at pp. 258-260. Dr. Zoda noted that Plaintiff's full school records show that he had received special education assistance since pre-school, and that he had already been enrolled in "several different districts throughout the country" by the time that he was in sixth grade. Tr. at p. 258. Based on test results, Plaintiff was "functioning within the low average range of intelligence when compared to children at his age level and at this respect he is at the 13th percentile." Tr. at p. 260. Dr. Zoda noted that there was "some discrepancy between his verbal IQ of 92 and his Performance IQ of 76, suggesting that he receives, processes, integrates and relates information more easily through the auditory/verbal as opposed to the visual/visual motor channel of learning." *Id*. Although the report does not provide details, it references a "suspension and possible change of placement" following "verbal threats" that Plaintiff attributed to his anger. *Id*.

9

The record also includes an IEP developed on October 6, 2011, when Plaintiff was 16 years old and in the eleventh grade. Tr. at p. 195-209. This was the final year of Plaintiff's formal education, before he left school and attempted to join the workforce. Tr. at pp. 40, 284. The IEP included January 2011 intelligence test results showing that Plaintiff's Composite IQ, Non Verbal IQ, and Verbal IQ were in the below average range, but noted that it was likely a low estimate of Plaintiff's cognitive ability because "[h]e was very impulsive with his responses and often did not take in all of the necessary information before answering a question." Tr. at p. 198. The IEP reflected a diagnosis of "emotional disturbance" and noted that Plaintiff had "been on home teaching since mid December 2010 because of a behavioral incident involving a staff member." *Id*. It also referenced prior reports that Plaintiff "often tries to avoid work by antagonizing other students or making inappropriate comments" and found that Plaintiff "needs a small, highly structured, behavior focused educational setting to meet both his educational needs and behavioral needs." Tr. at pp. 198-199. Plaintiff was observed to "not feel like he has a group of adults that he is able to consistently trust" and "uses threatening language to peers and staff on a daily basis." Tr. at p. 199.

The IEP notes that within the first few days of the 2011-2012 school year, Plaintiff "was suspended for a behavioral incident" after being denied a request to leave early and cautioned that "[a]lternate program options need to be discussed in order to ensure the safety and well-being of [Plaintiff] and the students and staff in his program." Tr. at p. 200. It also warned that when Plaintiff "becomes agitated or frustrated and his

behavior is escalating, it is very important to avoid physical contact. Even a soft touch for proximity control or to ask if he is alright will almost certainly end in [Plaintiff] becoming physically aggressive." *Id*. The IEP also notes examples of "verbal and physical aggression" toward other students. *Id*.

The Social Security Administration has promulgated specific guidance with respect to the evaluation of disability in young adults, whom it defines as "people between the ages of 18 to approximately 25." SSR 11-2p, 2011 WL 4055665, at *1 (Sept. 12, 2011). As noted above, Plaintiff was twenty-two when he filed the SSI application at issue in this case, and thus qualifies as a young adult. The same definition of disability, rules, and five-step sequential evaluation process apply to young adults as to older adults. SSR 11-2p, *supra*, 2011 WL 4055665 at *2; *Coppola v. Berryhill*, 2019 WL 1292848, at *20 (S.D.N.Y. Mar. 21, 2019) (collecting cases). SSR 11-2p "instructs that ALJs consider evidence from other sources who are not medical sources, but who know and have contact with the young adult, such as family members or educational personnel[,] to assist in evaluating the severity and impact of a young adult's impairment(s)." *Samuel v. Comm'r of Soc. Sec.*, 2015 WL 5774850, at *13 (E.D.N.Y. Sept. 30, 2015) (internal quotation marks omitted); *Hindsman v. Berryhill*, 2018 WL 4568598, at *11 (E.D. Pa. Sept. 24, 2018) (when acceptable medical source establishes existence of medically determinable impairment, ALJ will consider all evidence relevant to disability determination, including school records).

SSR 11-2p also addresses the task of extrapolating a young adult's work-related limitations from his performance in school. The SSR acknowledges that

> The young adult's ability to function in settings that are less demanding, more structured, or more supportive than those in which people typically work does not necessarily show how the young adult will be able to function in a work setting. . . .The more extra help or support of any kind that a young adult receives because of his or her impairment(s), the less independent he or she is in functioning, and the more severe we will find the limitation to be.

SSR 11-2p, 2011 WL 4055665, at *7-*8. SSR 11-2p also recognizes that "evidence about a young adult's functioning from school programs, including IEPs . . . may indicate how well a young adult can use his or her physical or mental abilities to perform work activities." *Id.* at *7. SSR 11-2p identifies certain "examples of school-reported difficulties [that] might indicate difficulty with work activities," including

> [d]ifficulty in understanding, remembering, and carrying out simple instructions and work procedures during a school-sponsored work experience; [d]ifficulty communicating spontaneously and appropriately in the classroom; [d]ifficulty with maintaining attention for extended periods in a classroom; [d]ifficulty relating to authority figures and responding appropriately to correction or criticism during school or a work-study experience; [and] [d]ifficulty using motor skills to move from one classroom to another.

*Id.*

SSR 11-2p, requiring examination and discussion of a claimant's school records, is binding on the ALJ in this case. *Heckler v. Edwards*, 465 U.S. 870, 873 n. 3 (1984) (Social Security Rulings are binding on all SSA decision-makers); *Samuel v. Comm'r of Soc. Sec.*, 2015 WL 5774850, at *13 (E.D.N.Y. Sept. 30, 2015) (remanding where

12

ALJ failed to review school records, including school psychologist records, in conflict with SSR 11-2p); *Barrios v. Colvin*, 2016 WL 756457, at *7 (C.D. Cal. Feb. 24, 2016) (remanding for further administrative proceedings to conduct the analysis required by SSR 11–2p).

The ALJ's cursory rejection of Plaintiff's school records disregarded the Commissioner's guidance as set forth in SSR 11-2p. Given Plaintiff's limited mental health treatment outside the educational context and the lack of any significant work experience from which to draw comparisons, school records may provide the most comprehensive insight into his level of functioning in the period preceding his SSI application. *Coppola v. Berryhill*, 2019 WL 1292848, at *22. Plaintiff's school records, documenting a lengthy history of emotional disturbance and physical aggression that required him to be removed from the classroom for individualized home education, would appear directly relevant to the ALJ's inquiry into Plaintiff's ability to maintain attention and concentration, meet attendance requirements, and interact with supervisors, co-workers, and the general public. All of these factors influenced the ALJ's consideration of the medical opinion evidence from the state agency consultant, Plaintiff's treating psychiatrist, and the psychiatric consultative examiner in developing her RFC determination, and impacted her examination of the VE at step five. *See* Tr. at pp. 18-20. Thus, the ALJ's error in labeling Plaintiff's educational record as irrelevant cannot be considered harmless.

In reaching this conclusion, the Court is not finding that Plaintiff's educational records establish that he is disabled. Nor is it disturbing the August 5, 2014 decision that Plaintiff was not disabled when he turned eighteen. Tr. at p. 58. The Court is only finding that further administrative proceedings are necessary for the inquiry into Plaintiff's special education records that the Commissioner requires pursuant to SSA 11-2p.[4]

### B. Plaintiff's Other Arguments

Because the Court is remanding for proper consideration of Plaintiff's educational records, the Court will not consider Plaintiff's additional arguments regarding the ALJ's RFC analysis and Step Five determination, because those decisions will necessarily be revisited upon remand. *See, e.g.*, *Emily B. v. Comm'r of Soc. Sec.*, 2020 WL 2404762, at *11 (N.D.N.Y. May 12, 2020) (declining to address specific challenges to RFC and step five determination while remanding for consideration of newly submitted medical opinion evidence); *Samantha D. v. Comm'r of Soc. Sec.*, 2020 WL 1163890, at *10 (N.D.N.Y. Mar. 11, 2020) (declining to reach arguments concerning whether ALJ's findings were supported by substantial evidence where the court had already determined that remand was necessary); *Raymond v. Comm'r of Soc.*

---

[4] Plaintiff's requested relief includes a request that the Court determine that he is entitled to benefits. Dkt. No. 11 at p. 23. Such relief is not available at this stage of the proceeding. "When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand[] to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996) (quoting *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986)).

*Sec.*, 357 F. Supp. 3d 232, 240 (W.D.N.Y. 2019) (declining to reach argument concerning whether RFC was supported by substantial evidence where the court had already determined that the ALJ had erred at step three analysis in evaluating whether plaintiff had met the requirements under a listing). Because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, it declines to reach the other issues raised by Plaintiff.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED,** that the decision of the Commissioner denying Plaintiff disability benefits is **REVERSED** and the matter is **REMANDED** for further proceedings pursuant to sentence four of section 405(g) as set forth above; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-

Decision and Order on the parties.

Dated: July 14, 2021
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge